Bryan K. Weir, CA Bar #310964
Thomas R. McCarthy*
William S. Consovoy*
Cameron T. Norris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

*Application for admission
pro hac vice pending

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., DONALD J. TRUMP, in his capacity as a private citizen,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX PADILLA, in his official capacity as California Secretary of State, and XAVIER BECERRA, in his official capacity as California Attorney General,<br><br>Defendants. | No. 2:19-cv-01501<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    Candidate Trump discloses extensive financial information ahead of the 2016 election. ............................................................................. 2

    B.    California Governor Jerry Brown vetoes SB27's predecessor bill in 2017 because of concerns about its legality. ................................................ 2

    C.    California passes SB27 under Governor Gavin Newsom. ............................... 3

    D.    Unless the Court enjoins SB27, the law will bar President Trump from the Republican primary ballot if he does not publicly disclose his tax returns. .... 5

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 6

    I.    The President is Likely to Succeed on the Merits. ............................................... 6

        A.    SB27 imposes an unconstitutional qualification on the presidency. ............... 6

        B.    SB27 exceeds California's authority to regulate elections. ............................. 8

        C.    SB27 violates the First Amendment. .............................................................. 10

        D.    The Ethics in Government Act preempts SB27. ............................................. 13

    II.    The Remaining Preliminary Injunction Factors Favor the President. ................ 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Am. Beverage Ass'n v. City & Cty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ................................................................................... 15

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ......................................................................................... 8, 9, 11

*Chamness v. Bowen*,
  722 F.3d 1110 (9th Cir. 2013) ............................................................................ 11, 12

*Cook v. Gralike*,
  531 U.S. 510 (2001) ......................................................................................... 8, 9, 10

*Council of Alternative Political Parties v. Hooks*,
  121 F.3d 876 (3d Cir. 1997) ................................................................................ 14, 15

*De La Fuente v. Padilla*,
  --- F.3d ---, 2019 WL 3242193 (9th Cir. July 19, 2019) ........................................... 11

*Elrod v. Burns*,
  427 U.S. 347 (1976) ................................................................................................. 14

*In re McGee*,
  36 Cal. 2d 592 (1951) ................................................................................................ 7

*Jenness v. Fortson*,
  403 U.S. 431 (1971) ................................................................................................. 12

*Libertarian Party of Illinois v. Scholz*,
  872 F.3d 518 (7th Cir. 2017) .................................................................................... 11

*Matsumoto v. Pua*,
  775 F.2d 1393 (9th Cir. 1985) ....................................................................... 10, 12, 14

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ......................................................................... 2, 14, 15

*Nader v. Brewer*,
  531 F.3d 1028 (9th Cir. 2008) .................................................................................. 10

*Rubin v. City of Santa Monica*,
  308 F.3d 1008 (9th Cir. 2002) .................................................................................. 11

*Schaefer v. Townsend*,
  215 F.3d 1031 (9th Cir. 2000) ................................................................................ 7, 8

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) ...................................................................................... 6

*Smith v. Allwright*,
  321 U.S. 649 (1944) ................................................................................................... 7

*Storer v. Brown*,
  415 U.S. 724 (1974) ................................................................................................... 9

*Stotysik v. Padilla*,
  910 F.3d 438 (9th Cir. 2018) .............................................................................. 10, 12

*Thalheimer v. City of San Diego*,
  645 F.3d 1109 (9th Cir. 2011) .................................................................................. 14

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997) ................................................................................................. 12

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995) ......................................................................................... 6, 7, 8
*United States v. Richey*,
    924 F.2d 857 (9th Cir. 1991) ................................................................................ 11
*Valle del Sol, Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) .............................................................................. 15

**CONSTITUTIONS AND STATUES**

U.S. Const. art. II, § 1, cl. 2 ........................................................................................ 8
U.S. Const., art. II, § 1, cl. 5 ....................................................................................... 6
Cal. Const. art. IV, § 8. .......................................................................................... 1, 4
5 U.S.C. App. 4 § 101 ................................................................................................ 2
5 U.S.C. App. 4 § 102 .............................................................................................. 13
5 U.S.C. App. 4 § 107. ............................................................................................. 14
26 U.S.C. § 6103 ............................................................................................. 1, 7, 11
Cal. Elec. Code § 6000.1 ............................................................................................ 5
Cal. Elec. Code § 6000.2 ............................................................................................ 5
Cal. Elec. Code § 6340 ............................................................................................... 5
Cal. Elec. Code § 6881 ....................................................................................... *passim*
Cal. Elec. Code § 6883 ....................................................................................... 11, 12
Cal. Elec. Code § 6884 .................................................................................... 4, 12, 13
Cal. Elec. Code § 8300 ........................................................................................... 4, 7
Cal. Elec. Code § 8600 ........................................................................................... 4, 7

**OTHER AUTHORITIES**

California Committee on the Judiciary Report (Senate), March 11, 2019 ................. 2
Ops. Cal. Legis. Counsel, No. 1718407 (Sept. 7, 2017) ............................................ 2
SB149 Presidential Primary Elections: Ballot Access, California Legislative
    Information ........................................................................................................ 2, 3
SB27 Primary Elections: Ballot Access, California Legislative Information ..... 3, 4, 5

# INTRODUCTION

In 2017, the California Legislature proposed a bill—the Presidential Tax Transparency and Accountability Act, better known as SB149—that would force public disclosure of President Trump's returns. Specifically, SB149 would have required President Trump to turn over five years of his federal tax returns to the California Secretary of State for public disclosure under the threat of barring him from the 2020 Republican primary ballot. But the bill ran into a problem: according to California's non-partisan Office of Legislative Counsel, SB149 was unconstitutional. The Legislature passed the bill anyway. Governor Jerry Brown, however, sided with the Office of Legislative Counsel. Recognizing the "political attractiveness … of getting President Trump's tax returns," he vetoed SB149 because he doubted its constitutionality.

The California Legislature pressed on. In December of 2018, after new Governor Gavin Newsom was elected, the Legislature reintroduced the Presidential Tax Transparency and Accountability Act, now known as SB27—notwithstanding the well-known doubts about its constitutionality. Because the presidential primaries were on the horizon, the Legislature branded it as an "urgency statute," declaring it "necessary for the immediate preservation of the public peace, health, or safety." Cal. Const. art. IV, §§ 8(c)(3), 8(d). This made it operative for the 2020 primaries. The Legislature passed the bill on partisan lines and Governor Newsom signed it into law on July 30, 2019.

SB27 is extraordinary in effect. California now threatens to bar a sitting President from his own party's primary if he should choose to maintain the confidentiality of his tax returns, as guaranteed by federal law. *See* 26 U.S.C. § 6103. And that threat is imminent—the date by which the President must make this choice is November 26, 2019.

Plaintiffs thus are forced to seek preliminary injunctive relief. And preliminary injunctive relief is warranted. SB27 violates the Qualifications Clause and the First Amendment, and it is preempted by the Ethics in Government Act. At the very least, the nonpartisan Office of Legislative Counsel's opinion that SB27 is unconstitutional demonstrates a strong "likelihood of success." The other preliminary injunction factors weigh heavily in favor of Plaintiffs because of the

constitutional rights at stake. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Melendres*, 695 F.3d at 1002)). The Court should grant a preliminary relief and enjoin Defendants from implementing SB27.

## BACKGROUND

### A. Candidate Trump discloses extensive financial information ahead of the 2016 election.

The Ethics in Government Act ("EIGA") provides for presidential candidates to disclose personal financial information. 5 U.S.C. App. 4 §§ 101(a), 102. During the 2016 election season, then-candidate Trump made wide-ranging disclosures concerning his finances. His 2015 financial disclosure spans over 90 pages and includes hundreds of entries listing assets and income, bank accounts and investments, financial transactions, liabilities, and the ownership structures of his companies. Ex. A. His 2016 financial disclosure spans over 100 pages. Ex. B. Having disclosed all of this information, then-candidate Trump declined to disclose his federal tax returns, citing ongoing IRS audits and the need to not prejudice his rights in those proceedings. McCarthy Decl. ¶ 4.

### B. California Governor Jerry Brown vetoes SB27's predecessor bill in 2017 because of concerns about its legality.

In 2017, the California Legislature proposed the Presidential Tax Transparency and Accountability Act. *See* SB149 Presidential Primary Elections: Ballot Access, California Legislative Information, "Text" Tab, https://bit.ly/2YQCXdf ("SB149 Legislative History"). The bill, also known as SB149, would have required President Trump to release his tax returns as a condition of appearing on the California primary ballot. *Id.*

California's Office of Legislative Counsel—a nonpartisan public agency—"concluded that [SB149] would be unconstitutional if enacted." California Committee on the Judiciary Report (Senate), March 11, 2019, at 5 (citing Ops. Cal. Legis. Counsel, No. 1718407 (Sept. 7, 2017)), *available at* https://bit.ly/2YuMG93 ("Judiciary Report"). But the Legislature passed the bill along

partisan lines anyway, 27-11 in the Senate and 54-23 in the Assembly, and sent it to Governor Jerry Brown for his signature. *See supra* SB149 Legislative History, "History" Tab.

Governor Brown vetoed the bill because of its legal and political infirmities:

> This bill is a response to President Trump's refusal to release his returns during the last election. While I recognize the political attractiveness—even the merits—of getting President Trump's tax returns, I worry about the political perils of individual states seeking to regulate presidential elections in this manner. First, it may not be constitutional. Second, it sets a 'slippery slope' precedent. Today we require tax returns, but what would be next? Five years of health records? A certified birth certificate? High school report cards? And will these requirements vary depending on which political party is in power?

SB149 Legislative History, "Status" Tab. Governor Brown further recognized that conditioning ballot access on disclosing tax returns infringes the constitutional rights of candidates, political parties, and voters: "A qualified candidate's ability to appear on the ballot is fundamental to our democratic system. For that reason, I hesitate to start down a road that well might lead to an ever escalating set of differing state requirements for presidential elections." *Id.*

**C. California passes SB27 under Governor Gavin Newsom.**

The lead authors of SB149 announced that they would reintroduce the bill when California had a new Governor. McCarthy Decl. ¶¶ 5-6. Governor Newsom was elected Governor of California on November 6, 2018, and SB149's lead authors reintroduced the bill on December 3, 2018. *See* SB27 Primary Elections: Ballot Access, California Legislative Information, "History" Tab, https://bit.ly/2yU5QLr ("SB27 Legislative History"). The law, this time listed as SB27, is again named the "Presidential Tax Transparency and Accountability Act" and has the same material requirements as SB149. *See* SB27 Legislative History, "Text" Tab.[1] Like the vetoed bill that it mimics, SB27 requires presidential candidates to submit their tax returns from the five previous years as a condition of appearing on the ballot for primary elections. *Id.*

SB27's stated purpose is to "provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations." Cal. Elec. Code § 6881. More specifically, Section 6883(a) of the law provides that

---

[1] SB27 also applies the disclosure requirement to gubernatorial candidates who wish to participate in a primary and has more specific directions than SB149 on how candidates submit the returns to the Secretary of State.

Memorandum in Support of
Motion for Preliminary Injunction

3

"the Secretary of State shall not print the name of a candidate for President of the United States on a primary election ballot, unless the candidate, at least 98 days before the presidential primary election, files with the Secretary of State copies of every income tax return the candidate filed with the Internal Revenue Service in the five most recent taxable years." The primary is March 3, 2020. By its terms, then, SB27 requires President Trump to file his last five federal tax returns with Defendant Alex Padilla on or before November 26, 2019.

On top of that, SB27 forces candidates to provide their written "consent" to grant "the Secretary of State permission to publicly release a version of the candidate's tax returns." Cal. Elec. Code § 6884(a)(2). And it ensures prompt public disclosure by requiring the Secretary of State, within five days of receipt, to "make redacted versions of the tax returns available to the public on the Secretary of State's internet website" where they must remain "until the official canvass for the presidential primary election is completed." *Id*. §§ 6884(c)(1), (3). Upon completion of the official canvass, the Secretary of State is directed to "remove the public versions of the tax returns" but is required to "retain the paper copies of the submitted tax returns until the completion of the official canvass of the ensuring general election." *Id.* §§ 6884(c)(3), (4). Because SB27 applies only to primaries and not the general election, independent and certified write-in candidates are not forced to disclose their tax returns as a condition of running for President. *See id.* §§ 8300, 8600.

Notably, SB27 was drafted as an "urgency statute" so that it could go into effect immediately. *See* SB27 Legislative History, "Text" Tab, § 3. The California Constitution provides that statutes normally "go into effect on January 1 next following a 90-day period from the date of enactment of the statute." Cal. Const. art. IV, § 8(c)(1). Certain defined exceptions to this rule allow a statute to go into effect immediately. One of those exceptions is for "urgency statutes," which are those laws "necessary for the immediate preservation of the public peace, health, or safety." Cal. Const. art. IV, §§ 8(c)(3), 8(d). If not for its status as an urgency statute, SB27 would not have been in effect for the upcoming presidential primary.

SB27 passed the California legislature along partisan lines on July 11, 2019, with a 29-10 vote in the state Senate and a 57-17 vote in the state Assembly. *See* SB27 Legislative History, "History" Tab. Governor Newsom signed the bill into law on July 30, 2019. *Id.*

**D. Unless the Court enjoins SB27, the law will bar President Trump from the Republican primary ballot if he does not publicly disclose his tax returns.**

Under California law, there are multiple ways for a candidate to appear on a primary ballot. One of those ways is through being a "generally advocated for or recognized" candidate. Cal. Elec. Code § 6340(a). California's "Secretary of State shall place the name of a candidate upon the Republican presidential primary ballot when the Secretary of State has determined that the candidate is generally advocated for or recognized throughout the United States or California as a candidate for the nomination of the Republican Party for President of the United States." *Id*. To qualify as a "generally advocated for or recognized candidate," a candidate must satisfy one of several criteria set forth in Section 6000.1 of the California Elections Code. That section provides:

> (a)   The candidate is qualified for funding under the Federal Election Campaign Act of 1974 (52 U.S.C. Sec. 30101, et seq.).
>
> (b)   The candidate has appeared as a candidate in a national presidential debate hosted by a political party qualified to participate in a primary election, with at least two participating candidates, which is publicly available for viewing by voters in more than one state during the current presidential election cycle.
>
> (c)   The candidate has been placed or has qualified for placement on a presidential primary ballot or a caucus ballot of a major or minor ballot-qualified political party in at least one other state in the current presidential election cycle.
>
> (d)   The candidate has been or has qualified to be a candidate in a caucus of a major or minor ballot-qualified political party in at least one other state in the current presidential election cycle.
>
> (e)   The candidate has all of the following:
>    (1) A current presidential campaign internet website or webpage hosted by the candidate or a qualified political party.
>    (2) A written request submitted on the candidate's behalf to the Secretary of State requesting that the candidate be placed on the presidential primary ballot. The written request is from a party qualified to participate in a primary election.

The candidate must submit proof of one of these criteria to the Secretary of State "on or before the 98th day before the presidential primary election." Cal. Elec. Code §§ 6000.1, 6000.2(b). The Republican presidential primary election will be held on March 3, 2020. The 98th day before the presidential primary election is November 26, 2019.

President Trump will satisfy several of these criteria and will submit the required proof "on

or before the 98th day before the presidential primary election." Glassner Decl. ¶ 6. President Trump thus will qualify as a "generally advocated for or recognized candidate" and will be entitled to have his name placed by the Secretary of State upon the Republican presidential primary ballot. Notwithstanding that President Trump will be entitled to have his name placed on the Republican presidential primary ballot, SB27 (unless enjoined) will bar him from that ballot if he does not turn over his federal tax returns for the last five years to the Secretary of State for public disclosure.

## LEGAL STANDARD

To obtain a preliminary injunction, plaintiffs ordinarily need to show that: "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018). "The Ninth Circuit weighs these factors on a sliding scale," however. *Id.* So when there are "'serious questions going to the merits'— that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are satisfied." *Id.*

## ARGUMENT

**I.    The President is Likely to Succeed on the Merits.**

**A. SB27 imposes an unconstitutional qualification on the presidency.**

The Presidential Qualifications Clause of the Constitution sets forth the requirements for eligibility for the Office of the President:

> No Person except a natural born Citizen … shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

U.S. Const., art. II, § 1, cl. 5. The Framers intended this Clause to "fix as exclusive the qualifications in the Constitution," *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 806 (1995), "thereby 'divest[ing]' States of any power to add qualifications," *id.* at 801. States thus do not "possess the power to supplement the exclusive qualifications set forth in the text of the Constitution," *id.* at 827, to bar candidates "who would otherwise qualify under the Qualifications Clause," *Schaefer v.*

*Townsend*, 215 F.3d 1031, 1035 (9th Cir. 2000); *see also U.S. Term Limits*, 514 U.S. at 803 ("Representatives and Senators are as much officers of the entire Union as is the President. States thus 'have just as much right, and no more, to prescribe new qualifications for a representative, as they have for a president.'"). Moreover, States may not accomplish indirectly what the Qualifications Clause prohibits them from accomplishing by direct means. *See U.S. Term Limits*, 514 U.S. at 829-30; *see also Smith v. Allwright*, 321 U.S. 649, 664 (1944) ("Constitutional rights would be of little value if they could be ... indirectly denied."). A state regulation thus is unconstitutional when it has "the likely effect of handicapping an otherwise qualified class of candidates." *Schaefer*, 215 F.3d at 1035; *U.S. Term Limits*, 514 U.S. at 836.

SB27 bars candidates from the primary election ballot if they decline to turn over their federal income tax returns to Defendants for public disclosure. SB27 plainly "handicaps" their chances of election by prohibiting them from participating in "an integral part of the election process." *In re McGee*, 36 Cal. 2d 592, 597 (1951). To be sure, such a candidate could still qualify for the general election ballot by independent nomination or through a write-in candidacy, Cal. Elec. Code §§ 8300, 8600, but these are plainly inadequate substitutes for participation in the primary, *see U.S. Term Limits*, at 514 U.S. at 831 ("[T]here is no denying that the ballot restrictions will make it significantly more difficult for the barred candidate to win the election.").

It is no answer to say that SB27 does not actually bar any candidate from participating in the primary because it gives every otherwise-qualified candidate a choice of giving up his or her right to maintain the privacy and confidentiality of their federal tax returns, 26 U.S.C. § 6103, to gain access to the primary ballot. As *Schaefer* makes clear, it is enough that SB27 would handicap those candidates who do not comply and might deter them from running. *See Schaefer*, 215 F.3d at 1037. In that case, the Ninth Circuit struck down as unconstitutional a California requirement that candidates for the House of Representatives reside in California at the time they filed their nomination papers. The Ninth Circuit held that the residency requirement violated the Qualifications Clause, notwithstanding the fact that non-residents could make themselves eligible simply by "maintain[ing] in-state residence for a period of several weeks to months" before election day. *Id.* As the *Schaefer* Court put it, the residency requirement "burden[ed] the entire pool of out-

of-state candidates" and "may very well deter [them] from running." *Id*. Just as the Ninth Circuit held in *Schaefer* then, SB27 violates the Qualifications Clause. At the very least, Plaintiffs have shown a likelihood of success on the merits of this claim.

### B. SB27 exceeds California's authority to regulate elections.

Even if SB27 does not impose an unconstitutional qualification, it still falls outside California's authority to regulate elections. The States have no inherent power to regulate federal elections. Rather, the Constitution delegates that power and "the States may regulate the incidents of [federal elections], including balloting, only within the exclusive delegation." *Cook v. Gralike*, 531 U.S. 510, 522-23 (2001). And though the Constitution grants States authority "to prescribe the procedural mechanisms" for federal elections, *id.* at 523, that authority is limited to "election *procedures*," *U.S. Term Limits*, 514 U.S. at 835. The power does not include the ability "to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Cook*, 531 U.S. at 523.

Accordingly, States may impose "generally applicable and even-handed [procedural] restrictions that protect the integrity of the election process itself." *U.S. Term Limits*, 514 U.S. at 834. They therefore can legislate on "matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns.'" *Cook*, 531 U.S. at 523-24. These are the types of "'procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved,' ensuring that elections are 'fair and honest,' and that 'some sort of order, rather than chaos, is to accompany the democratic process.'" *Id.* at 524 (citation omitted); *see also Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) ("We have upheld generally applicable and evenhanded ballot access restrictions that protect the integrity and reliability of the electoral process itself.").

These same limitations on States' authority apply to presidential elections. *Storer v. Brown*, 415 U.S. 724, 729-30 (1974); *Anderson*, 460 U.S. at 788 & n.9; *see also* U.S. Const. art. II, § 1, cl. 2 ("Each State shall appoint, in such *Manner* as the Legislature thereof may direct, a Number of

1   Electors … ." (emphasis added)). But "in the context of a Presidential election, state-imposed
2   restrictions implicate a uniquely important national interest" because "the President and the Vice
3   President of the United States are the only elected officials who represent all the voters in the
4   Nation." *Anderson*, 460 U.S. at 794-95. The "State's enforcement of more stringent ballot access
5   requirements [thus] has an impact beyond its own borders." *Id.* at 745. And for that reason, States
6   have "a less important interest in regulating Presidential elections than statewide or local elections,
7   because the outcome of the former will be largely determined by voters beyond the State's
8   boundaries." *Id.*

9   SB27 does not fall within California's authority to regulate elections. SB27's requirement
10  that candidates disclose their tax returns as a condition of appearing on the ballot does not resemble
11  any of the "procedural" regulations the Supreme Court has identified as within States' authority.
12  *Cook*, 531 U.S. at 523-24. It is not targeted at "protect[ing] the integrity and reliability of the
13  electoral process itself." *Anderson*, 460 U.S. at 788 n.9. It does not ensure that "some sort of order,
14  rather than chaos" accompanies the election. *Cook*, 531 U.S. at 524. And it does not require some
15  minimum level of support before a presidential candidate can be put on the ballot. *Anderson*, 460
16  U.S. at 788 n.9. It is therefore invalid.

17  *Cook* is instructive. There, Missouri passed an initiative that required ballots to disclose
18  whether candidates for the House and Senate supported Congressional term limits. *Cook*, 531 U.S.
19  at 514. Missouri defended the law as a valid exercise of power regulating federal elections, arguing
20  that it "merely regulates the manner in which elections are held by disclosing information about
21  congressional candidates." *Id.* at 523. The Supreme Court disagreed because the law bore "no
22  relation to the 'manner' of elections as we understand it"; it in no way regulated how an election
23  would be executed. *Id.* It instead was "plainly designed to favor candidates" who expressed support
24  for term limits. Indeed, the Court emphasized that "by directing the citizen's attention to the single
25  consideration of the candidates' fidelity to term limits, the labels imply that the issue is an
26  important—perhaps paramount—consideration in the citizen's choice, which may decisively
27  influence the citizen to cast his ballot against candidates branded as unfaithful." *Id*. at 525 (cleaned
28  up).

Memorandum in Support of                     9
Motion for Preliminary Injunction

1   So too here. As in *Cook*, SB27 bears "no relation to the 'manner' of elections." *Id.* at 523.
2   SB27's disclosure of information about candidates has nothing to do with ensuring an orderly
3   election and has nothing to do with election procedures at all. Rather, SB27 risks impacting voters
4   in the most substantive way—by affecting who they vote for. Indeed, that was SB27's design: "The
5   Legislature finds and declares that the State of California has a strong interest in ensuring that its
6   voters make informed, educated choices in the voting booth." Cal. Elec. Code § 6881. "[B]y
7   directing the citizen's attention to the single consideration of the candidates' [federal tax returns],
8   [SB27] impl[ies] that the issue is an important—perhaps paramount—consideration in the citizen's
9   choice, which may decisively influence the citizen to cast his ballot" for or against certain
10  candidates. *Cook,* 531 U.S. at 525 (cleaned up). As a result, SB27 falls outside California's power
11  to regulate federal elections.

**C. SB27 violates the First Amendment.**

13  Even if SB27 is a valid exercise of California's power to regulate elections, it still must
14  comply with other provisions of the Constitution, including the First Amendment. *See Matsumoto*
15  *v. Pua*, 775 F.2d 1393, 1396 (9th Cir. 1985). To that end, the Supreme Court has "developed a
16  balancing test to resolve the tension between a candidate's First Amendment rights and the state's
17  interest in preserving the fairness and integrity of the voting process." *Stotysik v. Padilla*, 910 F.3d
18  438, 444 (9th Cir. 2018). The "severity of the burden the election law imposes on the plaintiff's
19  rights dictates the level of scrutiny applied by the court." *Nader v. Brewer*, 531 F.3d 1028, 1034
20  (9th Cir. 2008). When the "election regulation imposes a 'severe burden' on First Amendment
21  rights, the state must show the law is narrowly tailored to achieve a compelling governmental
22  interest—strict scrutiny review.'" *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013)
23  (cleaned up). Those "restrictions that impose a lesser burden" are subject to a lower standard; they
24  must "be reasonably related to achieving the state's 'important regulatory interests.'" *Id.* Under
25  both tiers of scrutiny, again, the States' interest in regulating presidential elections is weaker than
26  statewide elections. *Anderson*, 460 U.S. at 795. SB27 violates the First Amendment under either
27  standard.

SB27 imposes a "severe" burden on the President's First Amendment rights. It conditions his ability to appear on the Republican primary ballot—and thus associate with Republican voters—on the public disclosure of five years of his federal tax returns, which are confidential documents protected by federal law that contain extensive amounts of information about his finances. As the Ninth Circuit has recognized, "[a] tax return and related information contains many intimate details about the taxpayer's personal and financial life." *United States v. Richey*, 924 F.2d 857, 861 (9th Cir. 1991). And each individual taxpayer has a right to privacy regarding that information. *Id.*; *see also* 26 U.S.C. § 6103. Requiring a candidate to disclose tax returns as a condition of exercising First Amendment rights thus imposes a severe burden on the candidate.

The disclosure obligation also is not neutral or "evenhanded." *Anderson*, 460 U.S. at 788 n.9. It applies only to candidates who wish to associate with a political party in a presidential primary. *See* Cal. Elec. Code § 6883(a). But there are other presidential candidates who do not go through a primary and, therefore, do not ever have to disclose their tax returns. *See De La Fuente v. Padilla*, --- F.3d ---, 2019 WL 3242193, at *3 (9th Cir. July 19, 2019) (explaining that presidential candidates "can access California's ballot" as write-ins or independents). SB27 therefore "burdens the right of a candidate to run as the standard bearer for his party." *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 524 (7th Cir. 2017).

Moreover, SB27 bears no resemblance to laws that have been found to impose lower burdens. For example, it is not akin to regulations concerning what information a candidate can include next to his name on the ballot. *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014-17 (9th Cir. 2002). Nor is it similar to regulations that prevent "voter confusion and overcrowded ballots," such as a law banning a candidate from appearing on a ballot with more than one political party designation. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364-65 (1997)

SB27 instead conditions ballot access on turning over otherwise confidential tax returns for public disclosure. Because it "significantly impairs access to the ballot," SB27 "imposes a severe [First Amendment] restriction." *Chamness*, 722 F.3d at 1116 (cleaned up), It thus warrants strict scrutiny. *See id.*; *see also Soltysik*, 910 F.3d at 445 (distinguishing a more burdensome regulation because it barred a candidate "from office or the ballot altogether."). For example, SB27 is similar

to the restriction in *Matsumoto*, where the Ninth Circuit held that a provision barring candidates from appearing on the ballot if they had been subject to a prior recall election was a "severe burden" on those candidates. 775 F.3d at 1397. Moreover, SB27 does nothing to advance the state interest served by minimal support requirements, which are ballot access restrictions that have been typically upheld. *See, e.g.*, *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot.").

Because SB27 is a "severe" burden, it is subject to strict scrutiny and Defendants "must show the law is narrowly tailored to achieve a compelling governmental interest." *Chamness*, 722 F.3d at 1110.  But SB27 fails under any tier of scrutiny because it is not sufficiently tailored or related to California's purported interests to satisfy any tier of scrutiny. The law's legislative findings note that "a Presidential candidate's income tax returns provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations." Cal Elec. Code. § 6881. That information, the findings claim, "helps voters to make a more informed decision." *Id.*

SB27 does not serve these interests in any meaningful way. To start, the provision applies only to those candidates who must survive a primary to reach the general election ballot. *See* Cal. Elec. Code § 6883(a). So it does not provide voters with the supposed "essential information" about every Presidential candidate. More problematic, however, is the tax returns are not publicly available when Californians actually vote for President during the general election. SB27 allows the Secretary of State to publicize the tax returns only during the primary. *Id.* § 6884(c)(3) ("The public versions of the tax returns shall be continuously posted until the official canvass for the presidential primary election is completed."). But once the primary is over, the Secretary of State must "remove the public versions of the tax returns" and retain only "paper copies" until after the general election. *Id.* §§ 6884(c)(3), (4). If California truly wanted to provide "voters with essential information regarding the candidate's potential conflicts of interest" to help them "make a more informed decision," *id.* § 6881, then it would keep the tax returns public through the most important stage of choosing the President—the actual general election.

In any event, the EIGA provides for the financial information that voters need to evaluate candidates' conflicts of interest. EIGA disclosures include extensive information such as the source, type, and amount of all income, gifts, interest in property, and liabilities to creditors. 5 U.S.C. App. 4 § 102. President Trump's 2015 and 2016 candidate disclosures, for example, spanned over 90 pages and contained hundreds of lines listing assets and income, bank accounts and investments, financial transactions, liabilities, and the ownership structures of his companies. *See* Exs. A, B. Requiring the disclosure of tax returns thus adds nothing additional that voters would need to evaluate potential conflicts of interest. In other words, SB27 does not actually serve the interest it purports to.[2]

### D.  The Ethics in Government Act preempts SB27.

Title I of the EIGA provides for the disclosure of "source, type, and amount or value" of income; honoraria from any source; dividends, rents, interest, and capital gains, and interests in property; the "entity and category of value of the total liabilities owed to any creditor;" and the identity of all positions held "as an officer, director, trustee, partner, proprietor, representative, employee, or consultant of any corporation, company, firm, partnership, or other business enterprise, any nonprofit organization, any labor organization, or any educational or other institution." *See generally* 5 U.S.C. App. 4 § 102. Title I of the EIGA also protects candidates from the need to make different or additional disclosures by expressly displacing all other similar federal or state disclosure laws. Specifically, it "supersede[s] any general requirement under any other provision of law or regulation with respect to the reporting of information required for purposes of preventing conflicts of interest or apparent conflicts of interest." 5 U.S.C. App. 4 § 107(b).

SB27 provides for the disclosure of extensive financial information by candidates for President. Indeed, by its own terms, one of the chief purposes of SB27 is to "provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations." Cal. Elec. Code § 6881. SB27 is plainly a "law or regulation with respect to the reporting of information required for the purposes of preventing

---

[2] The complaint includes an additional First Amendment claim alleging unconstitutional retaliation. *See* Compl. ¶¶ 67-70. Plaintiffs intend to pursue that claim at summary judgment.

conflicts of interest or apparent conflicts of interest." Section 107(b) thus supersedes SB27, barring California from requiring the disclosure of a presidential candidate's federal tax returns.

## II. The Remaining Preliminary Injunction Factors Favor the President.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)). This is true for First Amendment claims, where there is a "long line of precedent establishing that 'the loss of First Amendment freedoms, for even minimal periods of time,'" constitutes irreparable harm. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128-29 (9th Cir. 2011). And it is particularly true in cases, such as this one, challenging restrictions on ballot access. *See Matsumoto*, 775 F.2d at 1395-96. The reason for this rule is simple. "If the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997). That is why a district court must enter an injunction once plaintiffs establish a likelihood of success that a ballot-access restriction violates the Constitution. *See Matsumoto*, 775 F.2d at 1396 ("[I]f the plaintiffs established that they will probably succeed on the merits, then it would have been an abuse of discretion for the district court to have denied the preliminary injunction."). Plaintiffs have thus satisfied the irreparable harm prong.

The same is true for the final two factors. The Ninth Circuit has made it "clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Indeed, simply establishing a "serious First Amendment question[] compels a finding … that the balance of hardships tips sharply in Plaintiffs' favor." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (cleaned up). And "it is *always* in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Melendres*, 695 F.3d at 1002 (emphasis added)); *see also Hooks*, 121 F.3d at 883-84. The final two factors, then, compel entry of an injunction barring SB27's enforcement.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for a Preliminary Injunction and temporarily enjoin, for the pendency of this action, Defendants from enforcing SB27.

                Respectfully submitted,

Dated: August 8, 2019

*/s/ Bryan K. Weir*
Bryan K. Weir, CA Bar #310964
Thomas R. McCarthy*
William S. Consovoy*
Cameron T. Norris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

**Application for admission pro hac vice pending*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this pleading with the Clerk of the Court using the CM/ECF system. I certify that I have been in contact with counsel for Defendants, who have not yet entered an appearance or been served, and will transmit this filing via email to them at the below contact information.

Jay Russell
California Department of Justice
455 Golden Gate Avenue
San Francisco, CA 94102
jay.russell@doj.ca.gov
(415) 510-3617

Chad Stegeman
California Department of Justice
455 Golden Gate Avenue
San Francisco, CA 94102
chad.stegeman@doj.ca.gov
(415) 510-3624

Dated: August 8, 2019

*/s/ Bryan K. Weir*
Bryan K. Weir
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423