Thomas R. McCarthy*
William S. Consovoy*
Bryan K. Weir, CA Bar #310964
Cameron T. Norris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

**Admitted pro hac vice*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DONALD J. TRUMP FOR PRESIDENT, INC., DONALD J. TRUMP, in his capacity as a private citizen,

Plaintiffs,

v.

ALEX PADILLA, in his official capacity as California Secretary of State, and XAVIER BECERRA, in his official capacity as California Attorney General,

Defendants.

No. 2:19-cv-01501

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

ARGUMENT .................... 2

I. The President Is Likely to Succeed on the Merits. .................... 2

A. SB27 likely violates the Presidential Qualifications Clause. .................... 2

B. SB27 likely exceeds the State's authority to regulate presidential elections. .................... 4

C. SB27 likely violates the First Amendment. .................... 6

D. The EIGA likely preempts SB27. .................... 10

II. Given that Plaintiffs Have Established a Likelihood of Success on the Merits, the Equitable Factors Weigh in Favor of Preliminary Injunctive Relief. .................... 12

CONCLUSION .................... 12

CERTIFICATE OF SERVICE .................... 14

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
138 S. Ct. 2305 (2018) .......... 12

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) .......... 4, 5

*Arizona Libertarian Party v. Reagan*,
798 F.3d 723 (9th Cir. 2015) .......... 6

*Biener v. Calio*,
361 F.3d 206 (3d Cir. 2004) .......... 3

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) .......... 10

*Cartwright v. Barnes*,
304 F.3d 1138 (11th Cir. 2002) .......... 3

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) .......... 10

*Collector v. Hubbard*,
12 Wall. 1 (1871) .......... 11

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992) .......... 11

*Cook v. Gralike*,
531 U.S. 510 (2001) .......... 4, 5

*De la Fuente v. Merrill*,
214 F. Supp. 3d 1241 (M.D. Ala. Oct. 7, 2016) .......... 3

*In re McGee*,
36 Cal. 2d 592 (1951) .......... 2

*Libertarian Party of Illinois v. Rednour*,
108 F.3d 768 (7th Cir. 1997) .......... 3

*Matsumoto v. Pua*,
775 F.2d 1393 (9th Cir. 1985) .......... 6

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 2, 12

*Merle v. United States*,
351 F.3d 92 (3d Cir. 2003) .......... 3

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
557 U.S. 193 (2009) .......... 11

*Perry v. Thomas*,
482 U.S. 483 (1987) .......... 10

*Plante v. Gonzalez*,
575 F.2d 1119 (5th Cir. 1978) .......... 8

*Schaefer v. Townsend*,
215 F.3d 1031 (9th Cir. 2000) .......... 2, 3, 4

*Soltysik v. Padilla*,
910 F.3d 438 (9th Cir. 2018) .......... 9

*U.S. Civil Service Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548 (1973) ........ 3

*U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995) ........ 2, 3, 4, 7

*United States v. Alvarez–Sanchez*, 511 U.S. 350 (1994) ........ 11

*United States v. Gant*, 268 F. Supp. 2d 29 (D.D.C. 2003) ........ 8

*United States v. Gonzales*, 520 U.S. 1 (1997) ........ 11

*United States v. Richey*, 924 F.2d 857 (9th Cir. 1991) ........ 8

*Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ........ 2, 12

*Van Susteren v. Jones*, 331 F.3d 1024 (9th Cir. 2003) ........ 3

**Statutes and Other Authorities**

26 U.S.C. § 6103 ........ 8

5 U.S.C. App. 4 § 101 ........ 9

5 U.S.C. App. 4 § 104 ........ 8

5 U.S.C. App. 4 § 107 ........ 10

52 U.S.C. § 30101 ........ 9

9 U.S.C. § 2 ........ 10

11 C.F.R. § 100.3 ........ 9

Cal. Elec. Code § 6881 ........ 5

Cal. Elec. Code § 6340 ........ 9

Cal. Elec Code § 8300 ........ 7

Cal. Elec Code § 8600 ........ 7

SB 568 Primary Elections: Election Date, California Legislative Information, Assembly Floor Analysis (Sept. 13, 2017) ........ 4

Alex Padilla, *Today: California is One Year Out from Our March 3, 2020 Presidential Primary* (March 3, 2019) ........ 4

Black's Law Dictionary (4th ed. 1968) ........ 11

Black's Law Dictionary (6th ed. 1990) ........ 11

**INTRODUCTION**

As Plaintiffs Donald J. Trump for President, Inc. and Donald J. Trump ("Plaintiffs') explained in their opening brief, the California Legislature ignored several warning flags in rushing to enact SB27. It ignored the considered views of its own non-partisan Office of Legislative Counsel, which had concluded that a nearly identical predecessor bill was unconstitutional. It also ignored Governor Jerry Brown's veto and accompanying message questioning the bill's constitutionality and criticizing the precedent set by a law conditioning ballot access on the forced public disclosure of a candidate's tax returns. As Governor Brown put it: "Today we require tax returns, but what would be next? Five years of health records? A certified birth certificate? High school report cards? And will these requirements vary depending on which political party is in power?"

The California Legislature not only disregarded all of this, it deemed SB27 an "urgency statute" so that it could take effect almost instantaneously and apply to the upcoming presidential primary. The legislature thus created the circumstances warranting preliminary injunctive relief here: a law that violates the Constitution in numerous respects that will require a sitting President to either forgo his right to maintain the privacy and confidentiality of his federal tax returns or else surrender his right to appear on the primary ballot and associate with his political party and would-be voters.

Preliminary injunctive relief thus is warranted. Though Plaintiffs have demonstrated that they are likely to succeed on the merits of all their claims, the Court need only reach either Plaintiffs' Qualifications Clause claim *or* their Presidential Electors Clause claim to resolve this motion in their favor. This is because Defendants do not even address the Office of Legislative Counsel's conclusion that SB27 adds an impermissible qualification to the Presidency *and* exceeds the State's authority to regulate election procedures. This unrebutted, non-partisan opinion explains why Plaintiffs are likely to succeed on these claims.

Plaintiffs also meet the preliminary injunction equitable factors. The law has long made clear that these factors follow the likelihood of success in constitutional cases. Because Plaintiffs are likely to succeed, in other words, the equitable factors weigh in favor of preliminary injunctive relief. *See, e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Plaintiffs' motion should be granted, and the Court should preliminarily enjoin SB27.

## ARGUMENT

### I. The President Is Likely to Succeed on the Merits.

#### A. SB27 likely violates the Presidential Qualifications Clause.

As previously explained, California's Office of Legislative Counsel—a non-partisan agency that provides legal advice and analysis to the California Legislature—concluded that the predecessor bill to SB27 was unconstitutional. *See* Trump Brief 1-2; *see also Melendez v. Newsom*, 2:19-cv-1506, Doc. 17-8 (E.D. Cal.) ("Legislative Counsel Memo"). Given that the predecessor bill was identical to SB27 in all material respects, it is unusual to say the least that Defendants never mention—much less rebut—the Office of Legislative Counsel's legal opinion on this matter. That is undoubtedly because it cannot offer a persuasive rejoinder. Indeed, the Office of Legislative Counsel's opinion follows directly from settled principles. Because SB27 bars candidates from the primary ballot if they decline to disclose their federal income tax returns, it has "the likely effect of handicapping an otherwise qualified class of candidates," *Schaefer v. Townsend*, 215 F.3d 1031, 1035 (9th Cir. 2000); *U.S. Term Limits v. Thornton*, 514 U.S. 779, 836 (1995), and "may very well deter [them] from running," *Schaefer*, 215 F.3d at 1037. As a result, the statute is plainly unconstitutional. *See* Trump Brief at 7-8.

Defendants all but concede the point. They emphasize (at 17) that had "the Act had been in effect" when Governor Jerry Brown "did not disclose his tax returns when he ran for president in 1992," he "would not have been placed on the primary ballot." In other words, SB27 would have barred him from participating in "an integral part of the election process," *In re McGee*, 36 Cal. 2d 592, 597 (1951), in turn "handicapping" him in that process, *U.S. Term Limits*, 514 U.S. at 836, if

not "deter[ring] [him] from running" altogether, *Schaefer*, 215 F.3d at 1037; *see also* Legislative Counsel Memo 6 ("[A]lthough a candidate can comply with the mandate in S.B. 149, the measure would handicap those candidates who do not comply and could deter potential candidates from running for office.").

The best Defendants can do is cite inapposite precedent. They attempt to analogize SB27 to "common disaffiliation and 'sore loser' laws," signature and fee requirements, and the Hatch Act's resign-to-run provision, all of which courts have found lawful. Defs.' Br. 8-9 (citing *Van Susteren v. Jones*, 331 F.3d 1024 (9th Cir. 2003) (disaffiliation law); *De la Fuente v. Merrill*, 214 F. Supp. 3d 1241 (M.D. Ala. Oct. 7, 2016) ("sore loser" law); *Cartwright v. Barnes*, 304 F.3d 1138 (11th Cir. 2002) (5% signature requirement); *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768 (7th Cir. 1997) (same); *Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) ($3,000 filing fee); *Merle v. United States*, 351 F.3d 92 (3d Cir. 2003) (Hatch Act)). But the Hatch Act precedent (*Merle*) is entirely irrelevant, as that statute has long been understood as a permissible exercise of congressional authority to regulate the conduct of federal employees. *See U.S. Civil Service Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 556 (1973); *U.S. Term Limits*, 514 U.S. at 835 n.48. And *U.S. Term Limits* itself distinguished these other laws, as each involved a ballot-access measure directly tied to "the candidates' support in the electoral process." 514 U.S. at 835; *Schaefer*, 215 F.3d at 1038 (distinguishing those cases on the ground that "they did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process"); Legislative Counsel Memo 4. Needless to say, SB27's tax-return disclosure requirement has absolutely nothing to do with a candidate's support in the electoral process.

Defendants also attempt to contort the analysis by arguing that Plaintiffs "have failed to show that candidates who refuse to disclose their tax returns comprise a 'class of Constitutional concern.'" Defs.' Br. 9 (citing *Schaefer*, 215 F.3d at 1035). Contrary to their suggestion, however, that phrase is not an independent component of the Qualifications Clause analysis. To be sure, the Framers had considered the issue of nonresident candidates and "explicitly rejected any requirement of in-state residency before the election." *Schaefer*, 215 F.3d at 1036. But there is no requirement that the Framers have rejected any particular qualification in order for it to be barred

by the Qualifications Clause. This is because the qualifications set by the Constitution are "fixed and exclusive"—that is, "the Framers … divested States of any power to add qualifications." *U.S. Term Limits*, 514 U.S. at 823; *see id.* ("[N]o court has ever upheld a state-imposed qualification of any sort."). By barring all qualifications other than those set out in the Constitution, the Framers exhibited concern for all "candidates who would otherwise meet the requirements of the Qualifications Clause," *Schaefer*, 215 F.3d at 1035. To read the phrase "class of Constitutional concern" as meaning anything different would allow States to set additional qualifications for the Presidency, which is in direct contravention of the Qualifications Clause and the Supreme Court's jurisprudence interpreting it. Because SB27 attempts to add a qualification to the Office of the Presidency, it is unconstitutional.

**B. SB27 likely exceeds the State's authority to regulate presidential elections.[1]**

Plaintiffs are likely to succeed on the merits of their claim that SB27 exceeds California's authority under the Presidential Electors Clause. *See* Legislative Counsel Memo 9 (explaining that SB27 "likely exceeds the state's authority to regulate presidential elections").[2] States have no inherent power to regulate federal elections. Rather, the Constitution delegates to them the authority "to prescribe the procedural mechanisms" for federal elections. *Cook v. Gralike*, 531 U.S. 510, 523 (2001); *U.S. Term Limits*, 514 U.S. at 834-35; *see also Schaefer*, 215 F.3d at 1037-38; *Campbell v.*

---

[1] Defendants incorrectly characterize this issue as "the flip side" of the Qualifications Clause analysis. Defs.' Br. 10. The Qualifications Clause and the Presidential Electors Clause are separate constitutional provisions that set distinct limits on the exercise of state authority. And they require distinct analyses. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486 (1969) (analyzing Qualifications Clause but not state election-procedures authority); *Cook v. Gralike*, 531 U.S. 510 (2001) (analyzing the state election-procedures authority but not the Qualifications Clause).

[2] California's power under the Presidential Electors Clause is narrower than its power under the Elections Clause, which means that its authority to regulate election procedures is narrower in the context of presidential elections. *See Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983) (explaining that States have "a less important interest in regulating Presidential elections than statewide or local elections"). Defendants claim this is not true for Presidential primaries because they are determined "only by in-state voters." Defs.' Br. 11. But they provide no legal basis for this distinction. And as a practical matter, Presidential primaries impact the primaries in other States and thus impact the general election as well. Indeed, California recently moved its primary from June to March in order to have a bigger impact on the national process. *See* SB 568 Primary Elections: Election Date, California Legislative Information, "Bill Analysis" Tab, Assembly Floor Analysis 2 (Sept. 13, 2017) (explaining that the decision to move up the primary was the latest of several attempts "to move ahead of other states' primaries, in an effort to have more impact in the presidential nominating process."), https://bit.ly/2kuMicZ. As Defendant Padilla has recently stated: "With an earlier Primary, California will have a more significant voice in the presidential nomination process for all political parties." Alex Padilla, *Today: California is One Year Out from Our March 3, 2020 Presidential Primary* (March 3, 2019), https://bit.ly/2mcvGag.

*Davidson*, 233 F.3d 1229, 1232 (10th Cir. 2000). As a result, States may not legislate in a manner designed to affect the substantive way in which a voter chooses between otherwise qualified candidates; States, in other words, are constitutionally forbidden "'to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints.'" *Cook*, 531 U.S. at 523 (quoting *U.S. Term Limits*, 514 U.S. at 833-34). Defendants contend that Plaintiffs construe States' authority to regulate federal elections too narrowly, arguing (at 11) that States possess the power to enact complex elections codes. This is true, but also irrelevant. Nothing in the Constitution authorizes California to invade the ballot box and influence the choice a California voter makes as between otherwise qualified candidates. *See Cook*, 531 U.S. at 523 (explaining that States lack the "power to dictate electoral outcomes [or] to favor or disfavor a class of candidates").

SB27 exceeds California's election-procedures authority. It does not resemble any of the "procedural" regulations the Supreme Court has identified as within States' constitutional authority. Trump Br. 8-9 (citing *Cook*, 531 U.S. at 523-24). Nor does it "protect the integrity and reliability of the electoral *process* itself," *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) (emphasis added), or ensure that "some sort of order, rather than chaos" accompanies the election, *Cook*, 531 U.S. at 524. And it does not ensure there is a modicum of support before a presidential candidate can be placed on the ballot. *Anderson*, 460 U.S. at 788 n.9.

Rather, SB27 does precisely what the Supreme Court warned States may not do under the guise of regulating federal elections. Namely, it "directs the citizen's attention to [a particular] consideration … imply[ing] that the issue is an important—perhaps paramount—consideration in the citizen's choice." *Cook*, 531 U.S. at 525. Indeed, SB27's stated purpose is to influence the value judgments that a California voter makes in deciding how to cast his or her vote among qualified candidates. *See* Cal. Elec. Code § 6881 ("The Legislature finds and declares that the State of California has a strong interest in ensuring that its voters make informed, educated choices in the voting booth.").

Defendants embrace that the purpose of SB27 is to influence the choices "voters make … in the voting booth." In particular, they acknowledge that the goal is to provide "critical information about the candidates appearing on the primary ballot" in order to "help primary voters make better

informed decisions when choosing presidential … candidates in primary elections." Defs.' Br. 1-2; *see also id.* at 3 ("The information in tax returns ... helps voters to make a more informed decision."); *id.* at 19 (SB27 "ensur[es] that voters have fulsome and accurate information about the financial interests and business dealings of presidential primary candidates so that they may make informed decisions"). It thus cannot be disputed that SB27 "may decisively influence the citizen to cast his ballot" for or against a certain candidate. *Cook*, 531 U.S. at 525. In short, SB27 crosses the line from the permissibly procedural to the impermissibly substantive and is unconstitutional under *Cook*.

**C. SB27 likely violates the First Amendment.**

SB27 also violates Plaintiffs' First Amendment rights. As explained in Plaintiffs' opening brief, SB27 imposes "severe" burdens on the President's First Amendment rights by conditioning his ability to appear on the Republican primary ballot on public disclosure of his private federal tax returns. SB27 is therefore subject to strict scrutiny. And SB27 cannot survive that (or any lower) level of review because (1) the EIGA already serves California's purported interests and (2) California exempts candidates other than those from six political parties from the disclosure requirement.

Defendants respond that compliance with SB27 is only a minimal burden because candidates have already completed their tax returns, and candidates can submit those same documents to California. Whatever minimal burden that causes, according to Defendants, is far outweighed by California's interest in forcing the disclosures. But Defendants misunderstand the pertinent legal inquiry.

To begin, Defendants largely ignore Plaintiffs' important First Amendment interests (as well as those of the plaintiffs in the related cases). They instead myopically focus on the State's interests and the purported benefits of SB27. This disregard for the important political association rights at stake here is improper; "[r]estrictions on voting can burden … interwoven strands of liberty protected by the First and Fourteenth Amendments—namely, the right of individuals to associate for advancement of political beliefs, and the right of qualified voters, regardless of their political

persuasion, to cast their votes effectively." *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 729 (9th Cir. 2015) (cleaned up). And for that reason, "[t]he Supreme Court has indicated that restrictions on the right to run for public office must be carefully examined." *Matsumoto v. Pua*, 775 F.2d 1393, 1396 (9th Cir. 1985).

Worse still, Defendants attempt to downplay the burdens SB27 imposes on candidates, their parties, and would-be voters by blaming the candidates themselves for the harms resulting from SB27. "[I]f these candidates are precluded from appearing on the primary ballot," California contends (at 15), "it would be because of their deliberate refusal to comply with the same financial requirement that applies to all candidates, not from any burden placed on them by the Act." By this rationale, California could force candidates to disclose all manner of private, personal information in order to appear on the ballot and yet claim no burden because candidates could choose whether or not to comply. States cannot avoid the First Amendment's protections by characterizing a condition as a candidate's choice. *See U.S. Term Limits*, 514 U.S. at 829 ("As we have often noted, constitutional rights would be of little value if they could be indirectly denied." (cleaned up)). And it would set an unfortunate precedent. As Governor Jerry Brown commented when vetoing SB27's predecessor bill: "Today we require tax returns, but what would be next? Five years of health records? A certified birth certificate? High school report cards? And will these requirements vary depending on which political party is in power?"

Defendants also argue (at 15-16) that SB27 is not burdensome because it applies equally to "*all* candidates, regardless of their political belief or party affiliation."[3] But SB27 is obviously burdensome; it requires President Trump either to surrender his right to privacy and confidentiality of his tax returns or his right to associate with would-be voters in the primary. Regardless, SB27 does *not* apply to all candidates. It applies only to the six political parties that are qualified to have a primary under California law. *See* Defs.' Br. 4. It exempts candidates affiliated with other parties, independent candidates, and authorized write-in candidates. *See* Cal. Elec. Code §§ 8300, 8600.

---

[3] Although it has no bearing on the outcome here, Defendants' claim that SB27 is politically neutral is belied by the statements of the bill's sponsors and Governor Newsom, who were quite clear that SB27's intended target was Plaintiff Trump. *See* Compl. ¶¶ 37-39, 45-46, 54-58.

SB27 thus is not "generally applicable, even-handed, [and] politically neutral." *De La Feuente v. Padilla*, 930 F.3d 1101, 1106 (9th Cir. 2019).

Defendants' contention (at 17-18) that SB27 is less burdensome than the EIGA also misses the mark. The EIGA is not a ballot-access provision, which means that a failure to comply with the EIGA does not preclude a candidate from appearing on any ballot. It is punishable by a fine. 5 U.S.C. App. 4 § 104(a); *United States v. Gant*, 268 F. Supp. 2d 29, 33 (D.D.C. 2003). SB27 thus is significantly more burdensome than the EIGA.

Moreover, it is irrelevant that, "unlike the financial disclosures under EIGA, candidates do not have to prepare voluminous forms to comply with [SB27]." Defs.' Br. 12-13; *see also* Defs.' Br. 13 (arguing that SB27 is not burdensome because candidates "need only submit tax forms that were already submitted to the federal government."). But compiling the relevant documents is not the burden. The burden is requiring candidates to reveal sensitive information in tax returns—including information about "the taxpayer's family" and "health data" not in EIGA disclosures—as a condition of appearing on the ballot. *See United States v. Richey*, 924 F.2d 857, 861 (9th Cir. 1991) ("A tax return and related information contains many intimate details about the taxpayer's personal and financial life."). Congress specifically recognized the personal nature of that sort of information, made tax returns confidential, and placed sharp limits on when they can be disclosed. *See* 26 U.S.C. § 6103. Section 6103 refutes Defendant's suggestion that disclosure of a candidate's tax returns "imposes only a slight burden." Defs.' Br. 14; *see Richey*, 924 F.2d at 861 ("The policy of confidentiality for income tax data encourages the full disclosure of income by taxpayers in that the individuals or corporate taxpayer is assured that his neighbor or competitor will not be apprised of the intimate details of his financial life." (citation omitted)). Defendants' main case, *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978), confirms the same: a candidate's "interests in financial privacy … is *substantial*" and "violation of [that] privacy is *harmful*." *Id.* at 1135 (emphasis added).[4]

[4] *Plante* is otherwise inapposite. That case pre-dates *Anderson* and *Burdick*, employs a standard that it at odds with governing law, and was primarily concerned with whether a disclosure requirement violated a candidate's "right to privacy." *Plante*, 575 F.2d at 1127-37.

For these reasons, strict scrutiny applies to SB27. But it cannot satisfy any level of scrutiny given that the EIGA is a narrower, less burdensome alternative that serves whatever interest the State might have in enabling voters to evaluate a candidate's finances. Trump Br. 13. And California does not identify anything missing on EIGA disclosures that could be found on a tax return and serve SB27's purported interests. Defs.' Br. 21. California merely states that the EIGA "contains some, but not all, of the information in tax returns" and is therefore "not a substitute for the Act." *Id.* That is insufficient to show how SB27 is tailored to California's purported interests. *Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018) (explaining that a state still must "justify election regulations" that impose lower burdens).[5]

California's failure to impose the same disclosure requirement on independent and other candidates is likewise fatal. Defendants downplay the ill-fitting nature of SB27, stating that "the last time an independent presidential candidate appeared on California's general election ballot was 1992." Defs.' Br 26. But California spoke very differently about the viability of independent candidates while defending its independent-candidate regime last year. In a lawsuit challenging that regime*,* the plaintiff highlighted the same fact about the most recent independent candidate as a reason the regime was unconstitutional. Defendant Padilla responded that drawing a "line at 1992" is "arbitrary" and accused the plaintiff of "inexplicably refusing to look slightly earlier in time for independent presidential candidates on California central election ballots." Answering Brief, *De La Fuente v. Padilla*, No. 17-56668, 2018 WL 3018756, at *31 (9th Cir. June 13, 2018). Defendant Padilla highlighted "evidence from recent history show[ing] that independent presidential candidates can and do make general election ballots in California." *Id.* Defendants are now the ones "inexplicably" ignoring the viability of independent candidates. If California truly believed "in

[5] Defendants complain (at 21) that the EIGA disclosure occur after California's primary. But even assuming that is correct, the only reason why is because Defendants recently moved their primary forward by three months. *See supra* 4 n.2. In any event, Defendants are incorrect that EIGA's disclosures occur after California's March 3 primary. A person must make financial disclosures in the calendar year in which they become a "candidate." 5 U.S.C. App. 4 § 101(c). A person becomes a "candidate," for example, as soon as they receive more than $5,000 in contributions. 52 U.S.C. § 30101(2); 11 C.F.R. § 100.3(a). California's primary is March 3 and the Secretary of State announces primary candidates 88 days before the primary, which this cycle will be December 6, 2019. Cal. Elec. Code § 6340(b). Because those participating in the primary would become "candidates" in 2019, they would have to issue EIGA disclosures before the March 3 primary.

ensuring that its voters have fulsome and accurate information about the financial interests and business dealings" of presidential candidates, *see* Defs.' Br. 19, then it would have applied SB27's disclosure requirement to independent and write-in candidates too. California's failure to do so renders SB27 unconstitutional.

**D. The EIGA likely preempts SB27.**

As Plaintiffs explained in their opening brief, the EIGA provides for the disclosure of financial information by candidates for President while at the same time protecting candidates from having to make different or additional disclosures. It does so by expressly displacing all other similar federal or state disclosure laws. *See* 5 U.S.C. App. 4 § 107(b) ("The provisions of this title requiring the reporting of information shall supersede any general requirement under any other provision of law or regulation with respect to the reporting of information required for purposes of preventing conflicts of interest or apparent conflicts of interest."). Because SB27 is plainly a "law or regulation with respect to the reporting of information required for the purposes of preventing conflicts of interest or apparent conflicts of interest," it is superseded by Section 107(b).

Defendants do not dispute that SB27 is such a "law or regulation," but claim that 5 U.S.C. App. 4 § 107(b) does not preempt state law. They argue (at 26-28) that a presumption against preemption applies because the EIGA operates in a field traditionally occupied by the States; that the EIGA cannot preempt state law because it does not specifically reference "preemption" or "state law"; and that the legislative history of the EIGA confirms that it does not preempt state law. Defendants have it wrong every turn.

To be certain, a presumption against preemption applies in field of traditional state regulation. *See, e.g.*, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992). But the EIGA operates in the field of financial disclosures and conflict-of-interest laws for federal officeholders. This is clearly not a field traditionally occupied by the States. No presumption against preemption applies.

Furthermore, Defendants misunderstand preemption and misinterpret the relevant EIGA provision. Statutes can have preemptive force over contrary state law without using the magic words "state law" or "preemption." For example, Section 2 of the Federal Arbitration Act has long been understood to preempt contrary state law, *see Perry v. Thomas*, 482 U.S. 483, 492 (1987) ("§

2 of the Federal Arbitration Act preempts § 229 of the California Labor Code"); *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019), even though the words "state" and "preemption" appear nowhere in its text. *See generally* 9 U.S.C. § 2. Here, the statute uses the term "supersede," which means "[o]bliterate, set aside, annul, replace, make void, inefficacious or useless, repeal." Black's Law Dictionary (4th ed. 1968); *see also* Black's Law Dictionary (6th ed. 1990) (same). The statute thus "set[s] aside" and "replace[s]" "any general requirement under any other provision of law or regulation with respect to the reporting of information required for purposes of preventing conflicts of interest or apparent conflicts of interest." And because the term "any" imposes no limit on the phrase "other provision of law or regulation," *see United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("'[A]ny' has an expansive meaning—that is, 'one or some indiscriminately of whatever kind.'"), the statute operates on both federal and state laws and regulations, *id.* (construing "any other term of imprisonment" to mean sentences imposed by federal and state courts); *see also United States v. Alvarez–Sanchez*, 511 U.S. 350, 358 (1994) (construing statute referring to "any law enforcement officer" as including "federal, state, or local" officers); *Collector v. Hubbard*, 12 Wall. 1, 15 (1871) (concluding that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense").[6]

Finally, interpreting the EIGA in accordance with its ordinary meaning would allow the Court to avoid all of the constitutional questions this case presents. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."). That provides a powerful reason for adopting Plaintiffs' interpretation.

---

[6] Because the plain and ordinary meaning of the EIGA unambiguously gives it preemptive force over SB27, there is no need to resort to legislative history. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). In any event, the legislative history supports Plaintiffs' interpretation of the EIGA. In amending the EIGA in 1989, Congress chose the current "supersedes" provision, which (as explained above) "sets aside" and "replaces" both federal and state law. It is thus broader than the provision that Congress rejected, which would have preempted only "State or local law." *See* Defs.' Br. at 28.

### II. Given that Plaintiffs Have Established a Likelihood of Success on the Merits, the Equitable Factors Weigh in Favor of Preliminary Injunctive Relief.

Defendants do not quarrel with the proposition that a showing of likelihood of success on the merits means that Plaintiffs would be irreparably harmed without a preliminary injunction. Defs.' Br. 30 ("In the *absence* of any likely constitutional violation or preemption, plaintiffs cannot show irreparable harm." (emphasis added)). And for good reason. Binding precedent forecloses any argument otherwise. *See, e.g.*, *Melendres*, 695 F.3d at 1002 ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'").

Binding precedent also forecloses any argument on the equities and the public interest factors. *See id.* ("[I]t is *always* in the public interest to prevent the violation of a party's constitutional rights." (emphasis added)); *Whiting*, 732 F.3d at 1029 ("It is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available." (cleaned up)). Indeed, it forecloses the argument that Defendants advance. Relying on a single case for support, they claim that "the inability to enforce its duly enacted plans clearly inflicts irreparable harm to the State." Defs' Br. 30 (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018)). This argument is fatally flawed. The plucked quotation from *Abbott* addresses irreparable harm; it has nothing to do with the equities and public interest factors. And the Court in *Abbott* expressly assumed the statute was constitutional to make its point, which was whether the State could pursue an interlocutory appeal. *Abbott*, 138 S. Ct. at 2324 ("*Unless the statute is unconstitutional*, [an injunction] would seriously and irreparable harm the State … ." (emphasis added)). *Abbott* is inapplicable. Accordingly, and as Plaintiffs explained in their opening brief, their likelihood of success on the merits means that the equitable factors all weigh in favor of granting a preliminary injunction here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion for a Preliminary Injunction and temporarily enjoin, for the pendency of this action, Defendants from enforcing SB27.

Respectfully submitted,

Dated: September 12, 2019

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy*
William S. Consovoy*
Bryan K. Weir, CA Bar #310964
Cameron T. Norris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

**Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this pleading with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel.

Dated: September 12, 2019

*/s/ Thomas R. McCarthy*
Thomas R. McCarthy
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423